## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JENNIFER ANN KARSTETTER, | : | CIVIL ACTION: 1:20-CV-01603 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| **v.** | : | |
| | : | |
| KILOLO KIJAKAZI[1] | : | |
| Acting Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant. | : | |

## <u>MEMORANDUM OPINION</u>

### I. Introduction.

Plaintiff Jennifer Ann Karstetter ("Karstetter") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Supplemental Security income benefits under XVI of the Social Security Act. We have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). This matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, and she is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) "Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

of the Federal Rules of Civil Procedure. For the reasons set forth below, we will vacate the Commissioner's decision and remand the case to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## II.   Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 17-1 to 17-10.*[2]   On February 23, 2018, Karstetter protectively filed[3] an application for Social Security disability benefits, alleging disability beginning April 29, 2017. *Admin. Tr.* at 12.  Karstetter's claim was initially denied on April 13, 2018. *Id*.  On May 2, 2018, Karstetter filed a written request for a hearing. *Id.*  The hearing was held on March 27, 2019, in Harrisburg, Pennsylvania, and Karstetter appeared and testified with the assistance of counsel. *Id.*

---

[2] Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Karstetter's claims.

[3] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-cv-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017).  "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id*.

On May 31, 2019, Administrative Law Judge Theodore Burock ("ALJ") determined that Karstetter had not been disabled within the meaning of the Social Security Act from February 23, 2018, through May 31, 2019.[4] *Id.* at 12.

In a second decision on June 21, 2019, the ALJ determined that Karstetter had not been disabled within the meaning of the Social Security Act from February 23, 2018, through the date of the decision. *Id.* at 22. And so, he denied her benefits. *Id.* Karstetter appealed the ALJ's decision to the Appeals Council, which denied her request for review on July 2, 2020. *Id.* at 1. This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

On September 3, 2020, Karstetter began this action by filing a complaint claiming that the Commissioner's decision is not supported by substantial evidence and is contrary to law and regulation. *Doc. 1* ¶ 8. Karstetter requests that the court find that she is entitled to Social Security benefits or remand the case for further proceedings. *Id.* at 2; *Doc. 20* at 16. The Commissioner filed an answer to the complaint and a transcript of the proceedings that occurred before the Social Security Administration. *Docs. 16-17.* The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned.

---

[4] This decision does not appear in the Administrative Transcript. To avoid confusion, we note that the Administrative Transcript contains an unrelated decision by an ALJ rendered on April 28, 2017, regarding a previous social security disability claim by Karstetter. *Admin. Tr.* at 75.

*Doc. 15*.  The parties then filed briefs, *see docs. 20, 23, 24*, and this matter is ripe for decision.

## III.  Legal Standards

### A.  Substantial Evidence Review – the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012).  But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.  Substantial evidence "means— and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.  *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).  But in an adequately developed

factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003).

The question before this Court, therefore, is not whether Karstetter is disabled, but whether substantial evidence supports the Commissioner's finding that she is not disabled and whether the Commissioner correctly applied the relevant law.

### B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.

To receive benefits under Title XVI of the Social Security Act by reason of disability, a claimant generally must be "unable engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920.  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC").  20 C.F.R. § 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 416.945(a)(1).  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010).  But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national

economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV.   The ALJ's Decision Denying Karstetter's Claim.

On June 21, 2019, the ALJ denied Karstetter's claim for benefits. *Admin. Tr.* at 22. At step one of the sequential-evaluation process, the ALJ found that Karstetter had not engaged in substantial gainful activity since February 23, 2018, the application date. *Id.* at 14. At step two of the sequential-evaluation process, the ALJ found that Karstetter had the following severe impairments: depressive disorder and anxiety disorder. *Id.* At step three of the sequential-evaluation process, the ALJ

7

found that Karstetter did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

The ALJ then determined that Karstetter has the RFC to perform a full range of work at all exertional levels but that Karstetter is limited to "simple, routine, one (1) or two (2) step tasks." *Id.* at 16.  The ALJ determined that Karstetter "does not have the capacity to perform piecework." *Id.*  In making this RFC assessment, the ALJ stated that he considered all of Karstetter's symptoms and the extent to which the symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.*  The ALJ stated that he also considered the medical opinions and prior administrative medical findings. *Id.*

The ALJ then determined that Karstetter "has no past relevant work." *Id.* at 21.  The ALJ, however, found that considering Karstetter's age, education, work experience, and RFC, there exist jobs in significant numbers in the national economy that Karstetter can perform, such as a cleaning housekeeper, laundry laborer, or bakery worker on a conveyor line. *Id.*  In sum, the ALJ concluded that Karstetter was not disabled from February 23, 2018, through the date of decision on June 21, 2019. *Id.* at 22-23.  Thus, the ALJ denied Karstetter SSI benefits. *Id.*

## V.     Overview of the Regulations Regarding Opinion Evidence.

Karstetter argues that the ALJ's residual functional capacity ("RFC") assessment is not based on substantial evidence because the ALJ "failed to properly evaluate any opinions of record, using the same boilerplate explanation for each." *Doc. 20* at 5.

Because Karstetter's claim concerns the ALJ's handling of opinion evidence, we start with a brief overview of the regulations regarding opinion evidence. The regulations in this regard are different for claims filed before March 27, 2017, on the one hand, and for claims, like Karstetter's, filed on or after March 27, 2017, on the other hand. Specifically, the regulations applicable to claims filed on or after March 27, 2017, ("the new regulations") changed the way the Commissioner considers medical opinion evidence and eliminated the provision in the regulations applicable to claims filed before March 27, 2017, ("the old regulations") that granted special deference to opinions of treating physicians.

The new regulations have been described as a "paradigm shift" in the way medical opinions are evaluated. *Densberger v. Saul*, No. 1:20-CV-772, 2021 WL 1172982, at \*7 (M.D. Pa. Mar. 29, 2021). Under the old regulations, "ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Id*. But under the new regulations, "[t]he range of opinions that ALJs

were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Id*.

Under the old regulations, the ALJ assigns the weight he or she gives to a medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c).  And if "a treating source's medical opinions on the issue(s) of the nature and severity of [a claimant's] impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Commissioner "will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Under the old regulations, where the Commissioner does not give a treating source's medical opinion controlling weight, it analyzes the opinion in accordance with a number of factors:  the "[l]ength of the treatment relationship and the frequency of examination," the "[n]ature and extent of the treatment relationship," the "[s]upportability" of the opinion, the "[c]onsistency" of the opinion with the record as a whole, the "[s]pecialization" of the treating source, and any other relevant factors. *Id*. at §§ 404.1527(c)(2)–(c)(6), 416.927(c)(2)–(c)(6).

Under the new regulations, however, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the

10

claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Rather than

assigning weight to medical opinions, the Commissioner will articulate "how

persuasive" he or she finds the medical opinions. 20 C.F.R. §§ 404.1520c(b),

416.920c(b).  And the Commissioner's consideration of medical opinions is guided

by the following factors:  supportability; consistency; relationship with the claimant

(including the length of the treatment relationship, the frequency of examinations,

the purpose of the treatment relationship, the extent of the treatment relationship,

and the examining relationship); specialization of the medical source; and any other

factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c),

416.920c(c).  The most important of these factors are the "supportability" of the

opinion and the "consistency" of the opinion. 20 C.F.R. §§ 404.1520c(b)(2),

416.920c(b)(2).  As to supportability, the new regulations provide that "[t]he more

relevant the objective medical evidence and supporting explanations presented by a

medical source are to support his or her medical opinion(s) or prior administrative

medical finding(s), the more persuasive the medical opinions or prior administrative

medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  And as

to consistency, those regulations provide that "[t]he more consistent a medical

opinion(s) or prior administrative medical finding(s) is with the evidence from other

medical sources and nonmedical sources in the claim, the more persuasive the

medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§
404.1520c(c)(2), 416.920c(c)(2).

The ALJ must explain how he or she considered the "supportability" and
"consistency" of a medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2),
416.920c(b)(2).  Generally, the ALJ may, but is not required to, explain his or her
consideration of the other factors. Id.  But if there are two equally persuasive medical
opinions about the same issue that are not exactly the same, then the ALJ must
explain how he or she considered the other factors. 20 C.F.R. §§ 404.1520c(b)(3),
416.920c(b)(3).


## VI.   Discussion.

In her brief, Karstetter alleges that "[t]he ALJ's second RFC determination is
unsupported by substantial evidence because [the ALJ] failed to properly evaluate
any opinions of record, using the same boilerplate explanation for each." *Doc. 20* at
5. Specifically, Karstetter alleges that the ALJ failed to evaluate the supportability
and consistency of the medical opinions of CRNP Madsen, Dr. French, and Dr.
Baker, and instead used similar or identical explanations for rejecting each medical
opinion. *Doc. 20* at 8, 13.  Karstetter further alleges that in these similar explanations,
the ALJ mischaracterized evidence of Karstetter's symptoms, including evidence
that Karstetter struggled with driving, leaving the house alone, maintaining energy,

and focusing. *Doc. 20* at 10-12. Finally, Karstetter alleges that the ALJ improperly rejected Karstetter's complaints by comparing Karstetter's complaints with the RFC, engaging in a "cart before the horse" type of analysis. *Doc. 20* at 7.

We first address Karstetter's allegations that the ALJ failed to evaluate the supportability and consistency of the medical opinions of Karstetter's treating sources, including CRNP Madsen and Dr. French, and of Dr. Baker, and instead used similar or identical explanations including mischaracterized evidence for rejecting each medical opinion. *Doc. 20* at 8, 10-13.

The Commissioner contends that "[s]ubstantial evidence supports the ALJ's evaluations of the medical opinion evidence and prior administrative findings in the record" because the ALJ "relied on what little evidence he had to support his findings" due to the sparseness of the record. *Doc. 23* at 16-17. The Commissioner contends that the ALJ properly evaluated the supportability and consistency of the medical opinions of CRNP Madsen, Dr. French, and Dr. Baker. *Doc. 23* at 21-25. The Commissioner states:

> As the ALJ explained, Ms. Madsen's opinion that Plaintiff was seriously limited in performing at a consistent pace and dealing with work stress was not supported by her own treatment notes, which documented clear, coherent, and goal directed thought process and an average level of cognitive functioning (Tr. 19, comparing Tr. 391-92 with Tr. 363, 508-09). Ms. Madsen's finding that Plaintiff was seriously limited in asking performing at a consistent pace was not supported by her own treatment notes, which described Plaintiff as having normal concentration and logical thought processes (compare Tr. 391 with Tr. 363, 508-09).

As for consistency, Ms. Madsen's opinion that Plaintiff was unable to travel in unfamiliar places was not consistent with findings in the record that Plaintiff could go places independently and go out alone (Tr. 19, comparing Tr. 392 with Tr. 199-200). Ms. Madsen's findings that Plaintiff had difficulty thinking and concentrating was not consistent with a record that showed Plaintiff consistently exhibited normal concentration and average intellect (Tr. 19, comparing Tr. 391-92 with Tr. 363, 407-08, 411, 420, 435, 439-40, 450, 466-67, 508-09, 515) . . . .

[T]he ALJ also found Dr. French's opinion to be partially persuasive, despite it being rendered in 2015, three years prior to the alleged onset date (Tr. 19-20). Because it was rendered prior to the alleged onset date, the record is devoid of any treating notes by Dr. French. Despite this, as the ALJ explained, Dr. French's findings that Plaintiff had the unlimited ability to remember work-like procedures and to make simple work-related decisions – in line with the RFC for simple, routine, 1-2 step tasks – was supported by and consistent with objective medical evidence findings, including fair insight and judgment, coherent, goal-oriented thought process, adequate manner of relating, consistent decision-making capacity, and Plaintiff's own admissions that she did not need to be accompanied to go places and could shop in stores independently (Tr. 20, citing Tr. 363, 407-08, 411, 420, 435, 439-40, 450, 466-67, 508-09, 515) . . . .

The ALJ also considered Dr. Baker's opinion and found it not persuasive, explaining that the opinion relied on subjective complaints and was not supported by or consistent with a record showing that Plaintiff's mental status examinations were uniformly normal (Tr. 20, citing Tr. 363, 407-08, 411, 420, 435, 439-40, 450, 466-67, 508-09, 515). The ALJ explained that Dr. Baker's opinion relied heavily on subjective complaints and was thus inconsistent with the evidence, which showed benign findings (Tr. 20, citing Tr. 363, 407-08, 411, 420, 435, 439-40, 450, 466-67, 508-09, 515) . . . .

Plaintiff complains that the ALJ gave "the same rationale" for finding Ms. Madsen and Dr. French's opinions partially persuasive and for finding Dr. Baker's opinion to be unpersuasive (Pl.'s Br. at 7, 12-14). This is because, as previously explained, the record is so short and repeatedly demonstrates, despite it sparsity, that Plaintiff consistently

exhibited normal mental status examinations. The record shows that Plaintiff served as the primary caretaker for her elderly grandmother – keeping track of her grandmother's medications, cleaning her, getting her meals, and picking her up when she fell (Tr. 51, 198). The record, sparse as it is, shows that Plaintiff worked odd jobs that consistently got her out of the house – at the Renaissance Faire, babysitting, housesitting, and pet sitting (Tr. 37, 42, 46, 288, 292, 296, 312, 318, 496, 498). The record, sparse as it is, shows that Plaintiff could take care of her own needs, clean the house, do laundry, and isolated in large part to get away from her mother and the stress of caring for her grandmother (Tr. 282, 286, 292).

Indeed, in finding Plaintiff capable of performing simple, routine work with 1-2 step tasks and no piecework, the ALJ relied on Dr. Cloutier's prior administrative finding, which explained that, based on the record, Plaintiff appeared reasonably capable of making simple decisions, interacting effectively with others, coping with minor stressors, and performing simple routine type tasks (Tr. 18, citing Tr. 90). The ALJ relied on the opinion of Dr. DeWulf, who found that Plaintiff had no limitations in understanding and remembering simple instructions, which was consistent with the RFC (Tr. 18-19, citing Tr. 243). This was more than substantial evidence to support the ALJ's finding that Plaintiff could perform work within the parameters of the RFC.

*Doc. 23* at 24-25.

In response, Karstetter argues:

Defendant acquiesces that the ALJ applied the same rationale for all opinions of record. Dkt. No. 23 at 24. Defendant argues that this is because "the record is so short" such that there could only be one rationale. Dkt. No. 23 at 24. It cannot be said that the ALJ evaluated the consistency and supportability of all opinions in a manner allowing meaningful review, if that ALJ has provided the same, boilerplate rationale for rejecting, rejecting in-part, and crediting all opinions of record . . . . Defendant also does not challenge the fact that the ALJ seems to have a predetermined RFC, which the opinions of record are compared against. Dkt. No. 20 at 7. These points should be considered unopposed.

Further, Defendant inserts rationale on behalf of the ALJ, regarding Dr. French. For example, she argues that the ALJ found this opinion partially persuasive, despite being rendered three years prior to the alleged onset date and the record being devoid of treatment notes. However, Defendant's rationale should not be allowed to creep into the realm of consideration, as it was not advanced by the ALJ. A reviewing court "may not accept appellate counsel's post hoc rationalizations for agency action." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962). Defendant also contends that the ALJ reasoned that Plaintiff "served as the primary caretaker for her elderly grandmother," however, the ALJ never noted this in discounting the opinions. *Campbell v. Colvin*, No. 1:12–CV–1968, 2014 WL 257356, at *9 (M.D. Pa. Jan 23, 2014) (Caldwell, J.) (noting that it is the role of this Court to review the ALJ's decision, not the post-hoc rationalizations raised by the Commissioner in her brief). Defendant's primarily rationale is simply her own, and should not be considered by this Court.

Doc. 24 at 1-2.

In his June 2019 decision, the ALJ summarized the medical findings of CRNP

Madsen, Dr. French, and Dr. Baker and provided the following analyses:

The undersigned considered the opinion of Heather Madison [sic], CRNP . . . . While the undersigned agrees with some of the limitations stated in the first opinion, in regards to the stricter limitations as compared to the assigned residual functional capacity, the undersigned finds that they are not supported by the objective medical evidence of examination findings of a clear, coherent, and goal directed thought process and an average level of cognitive functioning, and is [sic] inconsistent with the claimant's own indication that she can get to places independently and can go out alone (B5E). Furthermore, difficulty with thinking and concentrating along with decreased energy is not shown by mental status examinations or consultative examinations in the record. For these reasons, this opinion is not persuasive. However, in regards to the GAF score, while the undersigned recognizes that the GAF assessment score represents a subjective assessment of an area of the claimant's functioning at a specific time based upon information provided by the claimant, not an objective representation of the claimant's overall functioning over a

longitudinal period of time, the GAF score of 65 suggests only a mild impairment of mental functioning, which is supported by the medical record as discussed above. Accordingly, this opinion is partially persuasive.

The undersigned considered the opinion of Dr. Jennifer French . . . . The undersigned finds that, to the extent that this opinion aligns with the residual functional capacity assigned above, it is supported by the objective medical evidence of findings of fair insight and judgment, along with a coherent goal oriented thought process and adequate manner of relating, along with the claimant consistently presenting with intact decision making capacity, and is consistent with the claimant's own indications that she does not need to be accompanied to go places and that the shops in stores independently (B7F, B5F, B5E). Accordingly, this opinion is partially persuasive.

The undersigned considered the opinion of Dr. David Baker . . . . The undersigned finds this opinion is not supported by the objectives medical evidence of findings of fair insight and judgment, along with a coherent, goal oriented thought process and adequate manner of relating, along with the claimant consistently presenting with intact decision making capacity, and is inconsistent with the claimant's own indications that she does not need to be accompanied to go places and that she shops in stores independently. Furthermore, the examiner relied on subjective complaints rather than objectives findings, and did not have access to the entire record (B7F, B5F, B5E). For these reasons, this opinion is not persuasive.

*Admin. Tr.* at 19-20.

The ALJ appears to rely upon the following reasons for rejecting the medical opinions discussed above insofar as the opinions do not match the RFC: fair insight and judgment; coherent, goal directed thought process; an average level of cognitive functioning; Karstetter's assertion that she can get to places independently and can

go out alone; and the absence of difficulty with thinking, concentrating, and energy in mental status examinations or consultative examinations.

In stating that Karstetter asserted that she can go places alone, the ALJ and the Commissioner cite to Karstetter's adult function report and administrative hearing. *See Admin. Tr.* at 19; *Doc. 23* at 25.  On March 16, 2018, Karstetter completed an Adult Function Report in which she stated that she goes out to the grocery store and medical appointments between two and four times per month and that she usually drives herself.  *Admin. Tr.* at 200-04 (also referred to as B5E). Karstetter also stated that she is afraid of running stop signs and forgetting where she is going when she drives, that she does occasionally forget her destination, and that she does not go out socially. *Admin. Tr.* at 198-203. During her administrative hearing on March 27, 2019, Karstetter testified that her mother drove her to the administrative hearing because her counselor told her not to drive and submitted concerns about Karstetter's ability to drive to PennDOT requesting a psychiatric evaluation of Karstetter. *Admin. Tr.* at 35-37. Karstetter also testified that she experiences panic attacks daily which last between one hour and three days and that leaving the house is one identified cause of her panic attacks. *Admin. Tr.* at 40-41.

It is these statements by Karstetter alone that the ALJ in his decision and the Commissioner in her brief cite as evidence that Karstetter can drive, go places unaccompanied, and shop in stores independently. *See Admin. Tr.* at 19; *Doc. 23* at

25.  Here, the ALJ was tasked with evaluating the evidence of whether Karstetter could leave the house and drive as safely as our laws require. Based on the ALJ's and the Commissioner's citations and explanations, we cannot find that the ALJ correctly stated the evidence of Karstetter's ability to drive and go out alone when the ALJ stated that Karstetter "indicat[ed] that she does not need to be accompanied to go places and that she shops in stores independently." *Admin. Tr.* at 20.

Karstetter also alleges that the ALJ mischaracterized her ability to think, focus, and maintain energy when evaluating the persuasiveness of the medical opinions. When evaluating the medical opinions of CRNP Madsen, Dr. French, and Dr. Baker, the ALJ stated, "[D]ifficulty with thinking and concentrating along with decreased energy is *not shown* by mental status examinations or consultative examinations in the record." *Admin. Tr.* at 19 (emphasis added). However, a mental status exam on July 23, 2018, stated that Karstetter "appear[ed] to have impaired attention and concentration . . . . Her judgment is limited." *Admin. Tr.* at 420. During a consultative examination on April 10, 2018, Dr. Baker found "mildly impaired" attention and concentration. *Admin. Tr.* at 399. Beyond the mental status examination sections of the treatment notes, we find additional references to Karstetter's difficulty with thinking, concentrating, and energy. *See Admin. Tr.* at 406 and 419. Perhaps if the ALJ had indicated that the medical records *generally* indicate that Karstetter is capable of concentration, thinking, and maintaining

energy, the ALJ would nonetheless have discounted the persuasiveness of the medical opinions. However, our review of the ALJ's decision is limited to the ALJ's stated analysis. *Nichols v. Colvin*, No. CIV.A. 14-01755, 2015 WL 5255245, at *4 (W.D. Pa. Sept. 9, 2015) (quoting *Griffies v. Astrue*, 855 F.Supp.2d 257, 272 (D. Del. 2012)) ("[District courts are] bound to the ALJ's stated grounds, and '[i]t is not for the Commissioner to make an after-the-fact argument in support of the ALJ's decision. The analysis in Commissioner's brief cannot substitute for the ALJ's analysis.'"). "An ALJ is free to accept or reject evidence, but not to mischaracterize it." *Malone v. Barnhart*, No. CIV A 05-2991, 2008 WL 4155707, at *4 (E.D. Pa. Aug. 14, 2008) (citing *Carter v. Railroad Retirement Bd.*, 834 F.2d 62, 66 (3d Cir.1987)). Here, the ALJ relied upon mischaracterized evidence as the basis upon which he found medical opinions or portions thereof unpersuasive.

When we review the ALJ's explanation of why the ALJ rejected CRNP Madsen's medical opinion without the mischaracterized evidence, the following remains: "[I]n regards to the stricter limitations as compared to the assigned residual functional capacity, the undersigned finds that they are not supported by the objective medical evidence of examination findings of a clear, coherent, and goal directed thought process and an average level of cognitive functioning." *Admin. Tr.* at 19. But we are uncertain how this counter-evidence leads to a finding that all of CRNP Madsen's medical opinion but the GAF score is "not persuasive." *Id.* CRNP

Madsen also found that Karstetter does not have reduced intellectual functioning and found her "seriously limited but not precluded" in her ability to set realistic goals. *Admin. Tr.* at 392. It seems that the only evidence cited by the ALJ which actually counters the medical opinion of CRNP Madsen is evidence of clear, coherent thought processes, and for this evidence, the ALJ has provided no citation.

In light of the ALJ's nearly bare rejection of CRNP Madsen's medical opinion without sufficient explanation to allow for further review, along with the mischaracterizations explained above, we find the Commissioner's decision is not supported by substantial evidence.

## VII.   Conclusion.

For the foregoing reasons, we will vacate the Commissioner's decision and remand the case to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. §405(g). Because we conclude that the Commissioner's decision must be vacated and the case remanded based on the ALJ's failure to provide adequate reasons for finding opinions of healthcare professionals who treated Karstetter unpersuasive, we will not address Karstetter's remaining claim of error. "Plaintiff's additional claims of error may be remedied through the case's treatment on remand." *Brown v. Saul*, No. CV 3:18-1619, 2020 WL 6731732, at *7 (M.D. Pa. Oct. 23, 2020), report and recommendation adopted, 2020 WL 6729164, at *1 (M.D.

Pa. Nov. 16, 2020).  "A remand may produce different results on these claims, making discussion of them moot." *Id*.

An appropriate order follows.

<u>**S/ Susan E. Schwab**</u>
Susan E. Schwab
United States Magistrate Judge